Filed 8/7/14  In re Jordan W. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re JORDAN W. et al., Persons Coming Under the Juvenile Court Law. | |
| | D065452 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. CJ1074A-B) |
| v. | |
| MARGARET C., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Laura J. Birkmeyer, Judge.  Affirmed in part and reversed in part and remanded.

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel and Erica R. Cortez, Senior Deputy County Counsel, for Plaintiff and Respondent.

Margaret C. appeals the judgment terminating her parental rights to her sons, Jordan W. and C.N. (the boys). Margaret contends the juvenile court erred by declining to apply the beneficial relationship exception (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i); statutory references are to this code unless otherwise specified) to termination of parental rights and, as to C.N. only, failed to comply with the notice requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). We affirm.

## BACKGROUND

In April 2012, the San Diego County Health and Human Services Agency (the Agency) filed dependency petitions for nine-year-old Jordan and one-year-old C.N. The petitions alleged the boys were exposed to violent confrontations between Margaret and C.N.'s father, Martin N. The boys were detained in Polinsky Children's Center. Less than two weeks later, Jordan was moved to the home of his paternal grandmother and C.N. was moved to the home of a nonrelative extended family member. The boys remained in these homes for the remainder of the case.

In May 2012, the court entered true findings on the petitions, ordered Jordan placed with a relative and C.N. placed with a nonrelative extended family member and ordered reunification services. At the 12-month hearing in July 2013, the court

2

terminated services and set a section 366.26 hearing.  The section 366.26 hearing took place in January and February 2014.

## ICWA

According to the detention report, Martin said he might have Native American heritage with the Blackfeet Tribe, but he was not a registered member of the tribe.  On the day of the detention hearing, Martin filed an ICWA-020 form (Cal. Rules of Court, rule 5.481(a)(2) [Parental Notification of Indian Status]) declaring that he might have Indian ancestry through the Blackfeet Tribe and he and C.N. might be eligible for membership.  The court deferred making an ICWA finding.

In May 2012, the Agency mailed ICWA notice to the United States Secretary of the Interior and the Bureau of Indian Affairs.  The notice did not mention the Blackfeet Tribe and no notice was sent to that tribe.  In December, the court found ICWA did not apply in C.N.'s case.

Margaret contends remand is necessary for proper ICWA notice in C.N.'s case, and the Agency concedes a limited remand is required.  In light of the lack of information in the ICWA notice concerning the Blackfeet Tribe (Blackfeet Tribe of the Blackfeet Indian Reservation of Montana), 79 Fed. Reg. 4748-02 (Jan. 29, 2014), and in light of the Agency's failure to give notice to that tribe, we agree a limited remand is necessary.

## THE BENEFICIAL RELATIONSHIP EXCEPTION

Margaret does not contest the finding the boys are adoptable.  If a dependent child is adoptable, the court must terminate parental rights at the section 366.26 hearing unless the parent proves the existence of a statutory exception.  (§ 366.26, subd. (c)(1); *In re*

3

*Helen W*. (2007) 150 Cal.App.4th 71, 80-81.) An exception exists if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) A beneficial relationship "promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents." (*In re Autumn H*. (1994) 27 Cal.App.4th 567, 575.) If terminating parental rights "would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome . . . ." (*Ibid*.) The existence of a beneficial relationship is determined by considering "[t]he age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs . . . ." (*Id*. at p. 576.) Examining the evidence in the light most favorable to the judgment (*ibid*.), we conclude substantial evidence supports the court's findings. The court found that Margaret had maintained regular visitation and contact during the period since the referral hearing, although she had not done so earlier in the case. The court also found that Margaret had not shown that the boys "would benefit continuing the relationship to such a degree that terminating parental rights would be detrimental to the [boys] . . . ."

By the conclusion of the section 366.26 hearing, 11-year-old Jordan and four-year-old C.N. had been out of Margaret's care for almost two years. For virtually all of that time, the boys had lived with their respective caregivers. C.N. had lived with his caregiver longer than he had lived with Margaret. The nonrelative extended family member wished to adopt C.N. and Jordan's paternal grandmother wished to adopt him.

4

Margaret and the boys showed affection for each other during their supervised visits. Visits were positive and Margaret was appropriate, often performing parental duties such as bringing snacks and clothes making sure the boys were comfortable and engaged. The boys enjoyed visits, but separated from Margaret easily when visits ended.

Margaret related to Jordan as a sibling or peer rather than a parent. He called her "mom," but did not trust her or look to her to meet his needs. Jordan had a loving and trusting relationship with his paternal grandmother, who had cared for him periodically in the past. He viewed her as a parental figure and was happy and secure in her care. Jordan said he wanted his paternal grandmother to adopt him but wanted to continue having a relationship with Margaret.

Margaret's relationship with C.N. was that of a friendly visitor. C.N. called both Margaret and his caregiver "mommy." C.N. was affectionate with his caregiver and was happy, safe, and thriving in her home.

In Margaret's care, the boys were exposed to chaos, violence, and marijuana use. When the boys were detained, after a long history of child welfare referrals, C.N. had breathing difficulties and Jordan had untreated tooth infections. Jordan suffered from depression and anxiety. With therapy and the support of his paternal grandmother, Jordan's mood and self esteem improved, despite Margaret's "drama," false promises and deliberate withholding of Jordan's belongings. The boys' caregivers provided them loving, nurturing, stable homes and the boys needed the permanency, stability, and consistency of adoption.

5

DISPOSITION

In Jordan's case, the judgment is affirmed. In C.N.'s case, the judgment is reversed and the case is remanded to the juvenile court with directions to order the Agency to give proper ICWA notice and file all required documentation with the court. If a tribe then claims C.N. is an Indian child, the court shall proceed in conformity with ICWA; if no tribe makes such a claim, the court shall reinstate its judgment in C.N.'s case.

McINTYRE, J.

WE CONCUR:

HALLER, Acting P. J.

McDONALD, J.

6